UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY KURZAWSKI,

        Plaintiff,                                  Hon. Jane M. Beckering

v.                                                             Case No. 1:21-cv-687

BRANCH COUNTY, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Gregory Kurzawski has sued Defendants Branch County and Branch County Sheriff's Deputies James Andrews, Eric Waterbury, and Dalton Turmell pursuant to 42 U.S.C. § 1983. He alleges that the individual Defendants used excessive force on him, in violation of the Fourteenth Amendment, or alternatively, the Eighth Amendment, on October 15, 2018, while he was incarcerated at the Branch County Jail. Kurzawski further alleges that Branch County is liable for the alleged constitutional violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

      Presently before me is Defendants Branch County, Waterbury, and Turmell's Motion for Summary Judgment. (ECF No. 67.) Defendant Andrews has not moved for summary judgment. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED**.[1]

---

[1] The parties' requests for oral argument are denied because the issues are adequately briefed, and oral argument would not further aid the decisional process.

## I. Background

On October 15, 2018, Kurzawski was incarcerated at the Branch County Jail as a pretrial detainee. That evening, Defendant Andrews gave Kurzawski and another prisoner single-blade razors and escorted them to a common area room (CO room) to shave before their court appearances the following morning. (ECF No. 67-12 at PageID.378.) Andrews left the area to attend to other duties after instructing both inmates to shave and retain their razors, which Andrews would collect when he returned. (*Id.*)

While Andrews was away, Kurzawski removed the blade from the razor, put the plastic handle in the trash can, and walked into the hallway, where he slipped the blade under his cell door. (ECF No. 67-2 at PageID.286; ECF No. 69 (Defs.' Ex. O (hallway video)).) When Andrews returned, he saw Kurzawski in the hallway and asked him why he was there. (ECF No. 67-12 at PageID.378.) Andrews told Kurzawski to return his razor. Kurzawski went to the CO room and retrieved the plastic handle from the trash can. (*Id.*; ECF No. 69 (Defs.' Ex. P (CO room video)).) When Andrews asked him about the blade, Kurzawski claimed that the blade came out, cutting his finger. (ECF No. 67-12 at PageID.378.) Feigning not knowing what happened to the blade, Kurzawski searched the trash and the sink area. (ECF No. 67-2 at PageID.300; Defs.' Ex. P.) When Kurzawski failed to produce the blade, Andrews handcuffed Kurzawski and radioed for assistance. (ECF No. 67-12 at PageID.378; Defs' Ex. P.) Defendant Waterbury arrived shortly thereafter, followed by Defendant Turmell. (Defs.' Exs. O and P.) Kurzawski remained in handcuffs while Defendants searched the area for the blade.

When Defendants failed to locate the blade, Defendants Andrews and Turmell escorted Kurzawski to the shower area to be strip searched.[2] (ECF No. 67-2 at PageID.287; Defs' Ex. O.)

---

[2] Defendants conducted the strip search in the shower, which has no cameras, to afford Kurzawski privacy. (ECF No. 67-3 at PageID.308.)

Defendants did not locate the blade on Kurzawski's person. (ECF No. 67-12 at PageID.378.) According to Kurzawski, Andrews ordered him onto the shower floor and said, "if I find this razor, I'm going to beat your goddamn ass." (ECF No. 6702 at PageID.288.) Andrews then left the shower area to watch the surveillance footage of the hallway to find out where Kurzawski put the blade, while Turmell remained with Kurzawski in the shower area. (ECF No. 67-2 at PageID.288; ECF No. 67-12 at PageID.378.) After Andrews reviewed the video, he and Waterbury located the razor under a bunk in cell B44. (*Id.*) Andrews then returned to the shower area where, according to Kurzawski, he said, "I seen you take the razor," and kicked and punched Kurzawski in the ribs three to five times while he was on the floor. (ECF No. 67-2 at PageID.287–88.)

Andrews escorted Kurzawski, handcuffed, to a maximum-security cell for concealing and introducing a deadly weapon into the jail. (*Id.* at PageID.289; ECF No. 67-12 at PageID.379.) Andrews employed an escort hold, which involves raising the inmate's handcuffed arms up behind his back, in order to control Kurzawski's movements. (ECF No. 69 (Defs.' Ex. Q (East Hallway view)).) Defendants Turmell and Waterbury followed several feet behind as Andrews walked with Kurzawski. (*Id.*) Kurzawski claims that Andrews lifted his arms as high as they would go. He yelled, "I'm not resisting," as they walked. (ECF No. 67-2 at PageID.289.) Kurzawski further alleges that Andrews slammed him into the door when they reached the end of the hallway. (*Id.*)

Defendant Waterbury opened the door to the maximum-security cell while Defendant Andrews escorted Kurzawski inside. (Defs.' Ex. Q.) Andrews ordered Kurzawski to the ground as Turmell and Waterbury stood in the doorway. (ECF No. 67-2 at PageID.290; ECF No. 67-3 at PageID.311; ECF No. 67-5 at PageID.335.) Once Kurzawski was on the ground, Andrews bent down to try to remove the handcuffs. (ECF No. 67-3 at PageID.311.) Because Kurzawski was moving his head from side-to-side trying to look up at Andrews and not holding still, Andrews

3

struggled to remove the handcuffs. (ECF No. 67-2 at PageID.290; ECF No. 67-3 at PageID.311–12.) At that point Defendant Turmell entered the cell to assist Andrews in removing the handcuffs. Because Kurzawski was "thrashing about," Turmell was unable to get his key into the handcuffs. (ECF No. 67-4 at PageID.324.) Kurzawski claims that Andrews put his knee in Kurzawski's back, although Andrews denies that he did this. (ECF No. 67-2 at PageID.290; ECF No. 67-3 at PageID.311.) As Andrews was trying to reposition himself to gain better control of Kurzawski, his knee collided with Kurzawski's chin, resulting in a loud "pop." Kurzawski yelled, "You broke my fucking jaw," as blood ran out of his mouth. (ECF No. 67-2 at PageID.290–91; ECF No. 67-3 at PageID.314.)

Defendants left Kurzawski handcuffed in the cell and returned to the control center to arrange for him to be taken to the hospital, as jail medical staff was not on duty at the time. (ECF No. 67-12 at PageID.382–83.) A short time later, Defendant Turmell transported Kurzawski to the local hospital in a patrol vehicle. (ECF No. 67-2 at PageID.291.) Kurzawski sustained a broken jaw and was eventually transferred to Bronson Hospital in Kalamazoo for surgery. (*Id.* at PageID.292.) Kurzawski was later charged and ultimately pled guilty to possession of a weapon based on the razor incident. (*Id.* at PageID.93.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). When video evidence is presented, witness testimony will not create a genuine issue of material fact if the video is unambiguous and answers the pertinent factual questions. *See Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

### III.  Discussion

#### A.  Excessive Force

Defendants Waterbury and Turmell moved for summary judgment, arguing that they are entitled to qualified immunity because Kurzawski has no evidence that they used force on him in a manner that violated the Fourteenth Amendment. Defendants further noted that the complaint alleged no unconstitutional act by Waterbury and, as to Turmell, alleged only that he struck Kurzawski in the shower, which Kurzawski's testimony confirms was not true. (ECF No. 67-1 at PageID.274 (citing ECF No. 1 at PageID.3 and ECF No. 67-2 at PageID.287–91.) In response, Kurzawski concedes that he has no evidence that Defendants Waterbury and Turmell used excessive and/or unreasonable force on him, but argues that questions of fact remain as to whether they failed to intervene and prevent Andrews from employing excessive force. (ECF No. 74 at PageID.447.) Defendants Waterbury and Turmell note in their reply that Kurzawski did not plead a failure to intervene claim in his complaint. They point out the complaint's sole claim against them was that they used excessive force on Kurzawski in violation of the Fourteenth Amendment, or alternatively, the Eighth Amendment, and did not include a separate count alleging a "failure to

5

intervene." They further argue that the complaint contains no factual allegation that could plausibly establish a failure to intervene claim. (ECF No. 77 at PageID.603-77.)[3]

It is not uncommon for a plaintiff asserting an excessive force claim also to allege that officers who were present at the scene but did not use force failed to intervene to prevent the alleged violation. While a failure-to-intervene claim is closely related to an excessive force claim, it is, nonetheless, a separate claim requiring proof of separate elements. *See Kacynski v. Dewey*, No. 1:20-cv-126, 2021 WL 5334369, at *2 (W.D. Mich. Apr. 5, 2021) (denying motion for leave to amend to add a failure-to-intervene claim in connection with existing excessive force claim due to failure to show good cause). For example, in *Briggs v. Miles*, No. 1:13-CV-228, 2014 WL 12725042 (W.D. Mich. Sept. 15, 2014), *report and recommendation adopted*, 2015 WL 1120132 (Mar. 12, 2015), which Kurzawski cites, the plaintiff—a prisoner proceeding pro se at the time he filed his complaint—specially alleged that the defendants used excessive force or failed to intervene to prevent the misuse of physical force. *Id.* at *9. In addition, the court noted that the plaintiff clarified in his deposition that he was not alleging that certain defendants used excessive force, but instead that they failed to intervene to prevent its use. *Id.* at *4. The elements of a failure-to-intervene claim are that: "the officers both (1) 'observed or had reason to know that excessive force would be or was being used, and (2) . . . had both the opportunity and the means to prevent the harm from occurring.'" *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

"It is well-settled that a plaintiff may not expand its claims to assert new theories in response to summary judgment or on appeal." *Renner v. Ford Motor Co.*, 516 F. App'x 498, 504

---

[3] The reply was filed on December 17. Although Plaintiff had time to request leave to file a surreply, he did not do so.

(6th Cir. 2013) (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)). Moreover, "'[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).'" *Id.* (quoting *Tucker v. Union of Needletrades*, 407 F.3d 784, 788 (6th Cir. 2005)).

In *Grinnell v. City of Taylor*, No. 21-2748, 2022 WL 1562291 (6th Cir. May 18, 2022)—another case cited by Kurzawski—the Sixth Circuit addressed the same argument Defendants Waterbury and Turmell raise here, *i.e.*, that the plaintiff did not specifically allege a failure-to-intervene claim in his complaint. *Id.* at *5. The court observed that in such a situation, the relevant "inquiry is whether the party is attempting to expand the claims already brought." *Id.* (citing *Bridgeport Music*, 508 F.3d at 400). It further noted that in considering this issue, "courts consider whether the allegedly new claim causes 'unfair surprise' to the defendant." *Id.* (citing *Tucker*, 407 F.3d at 788). First, the court found that the plaintiff was not expanding his complaint to include a failure-to-intervene claim. It noted that while the plaintiff never used the phrase "failure to intervene," he did allege at various points in the complaint that the defendants "were obligated to stop [the officers] from the brutal, unjustified physical attack inflicted on Plaintiff," and "none of the other officers at the scene came to the rescue of Plaintiff, nor did they attempt to restrain the assaulting officers. . . ." *Id.* (quoting complaint). As for unfair surprise, the court noted that during the plaintiff's deposition, his counsel clarified the plaintiff's position about what he was alleging a certain defendant did wrong, to which the plaintiff responded, "She didn't speak up and stop it when I was handcuffed. She should have said hey, he's handcuffed." *Id.* at *5.

Kurzawski's complaint does not contain allegations similar to those in *Grinnell*. The complaint alleges that "while in the shower area, Defendants Andrews and Turmell struck Plaintiff without justification." (ECF No. 1 at PageID.3.) It further alleges that Andrews "lifted Plaintiff's

7

arms behind his back and parallel to his shoulders, while forcefully pushing him forward during the escort and while Defendants Waterbury and Turmell open [sic] doors and assisted." (*Id.*) Finally, it alleges that Defendant Andrews threw Kurzawski onto the floor while Defendants Waterbury and Turmell stood in the doorway, blocking the cameras, and that Andrews dropped his knee on Kurzawski's face. (*Id.*)

The claims themselves are limited to excessive force. For example, Count I (Fourteenth Amendment claim) alleges that "Defendants violated Plaintiff's clearly established and federally protected rights . . . to be free from unreasonable searches and seizures mainly to be free from excessive force, when they employed unnecessary and unreasonable excessive force which resulted in significant injuries to Plaintiff." (*Id.* at PageID.4.) Count II (Eighth Amendment claim) alleges that "[t]he individual Defendants violated Plaintiff's federally protected rights by unnecessarily using excessive and/or unreasonable physical force against Plaintiff for no legally justifiable reason whatsoever." (*Id.* at PageID.5.) Again, nothing in the complaint indicates Kurzawski was alleging that Waterbury or Turmell failed to intervene to prevent the alleged violation.

The closest the complaint comes to alleging a failure to intervene claim is in stating that Defendants were present and "assisted." That is not enough without an allegation that Defendants had an opportunity to, and failed to, intervene. While Kurzawski argues that the assault lasted three to four minutes and that that was sufficient time to intervene, unlike in *Grinell*, 2022 WL 1562291 at *6, the alleged assault was not continuous.[4] Rather, it was made up of discrete incidents. There

---

[4] Moreover, in *Grinell*, because of the severity of the assault, the plaintiff was unable to identify which defendants did what. According to the Sixth Circuit, this was the "rare situation in which a plaintiff is unable to identify which officers are alleged to have committed which unconstitutional acts." *Grinell*, 2022 WL 1562291 at *4. It reviewed the plaintiff's complaint through that lens.

is no evidence that Waterbury and Turmell had reason to know in advance that Andrews would strike Kurzawski in the shower, run him into a wall while in an escort hold, or drop his knee on Kurzawski's face.

As for "unfair surprise," Kurzawski's statement of the case in the November 16, 2021 joint status report adheres to the theory that all Defendants were liable for excessive force, without any suggestion that Waterbury or Turmell failed to act to prevent Andrews' alleged use of excessive force. (ECF No. 16 at PageID.51–53.) Finally, I reviewed Kurzawski's, Waterbury's, and Turmell's deposition transcripts to determine whether any statements like those in *Grinnell* were made during discovery that would have given defense counsel notice that Kurzawski was alleging that Waterbury and Turmell failed to intervene, but I found no such statements. Counsel never asked Kurzawski what he was alleging Waterbury and Turmell did to violate his rights. The prejudice is clear. Had Defendants been aware that Kurzawski was asserting that they failed to intervene, counsel might have asked different or additional questions during discovery and, obviously, would have crafted a summary judgment motion directed at failure-to-intervene claims.

Accordingly, I conclude that Kurzawski's response improperly seeks to expand his complaint to include failure-to-intervene claims and that allowing him to now assert such claims would result in unfair surprise to Defendants Waterbury and Turmell. I thus recommend that they are entitled to summary judgment.

    **B.**    ***Monell* Claim**

In Count III of his complaint, Kurzawski alleges that the County is liable for the alleged constitutional violations pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality may only be liable under Section 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 39 (2010) (citing *Monell*, 436 U.S. at 694). In a municipal liability claim, the finding of a policy

or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

As an initial matter, I note that Count III is a boilerplate *Monell* claim asserting nothing more than legal conclusions. (ECF No. 1 at PageID.6–7; *compare* Case No. 1:22-cv-1132, ECF No. 1 at PageID.6–7, and Case No. 1:21-cv-453, ECF No. 1 at PageID.7–8.) The *Monell* claim likely would not have survived a motion to dismiss had the County filed one. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 388–89 (6th Cir. 2017) (confirming that the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply to *Monell* claims); *Rayfield v. City of Grand Rapids*, 373 F. Supp. 3d 962, 977 (W.D. Mich. 2018) ("Conclusory assertions [of a policy or custom] are not enough to state a *Twombly* plausible *Monell* claim."). In any event, Kurzawski's theory of liability set forth in his summary judgment response is failure to train or supervise.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish this type of claim, a plaintiff must show that: "1) the [municipality's] training program was inadequate for the tasks that [its employees] must perform; 2) the inadequacy was the result of the [municipality's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)). Generally speaking, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate

indifference[.]" *Connick*, 563 U.S. at 62 (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). "It is not enough for [a plaintiff] to show that his injury could have been avoided if the officer had had more or better training." *Mayo v. Macomb Cnty.*, 183 F.3d 554, 558 (6th Cir. 1999) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). To impose liability under a failure-to-supervise theory, a plaintiff must show that: (1) the defendant government was aware, or on notice, that its employees committed or were likely to commit constitutional violations; (2) it chose not to take corrective action with deliberate indifference to the consequences for individuals' constitutional rights; and (3) the lack of corrective action actually caused the alleged constitutional violation. *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010).

Here, Kurzawski presents no evidence to support his failure-to-train/supervise allegation. Instead, he relies on a single-incident theory of liability, citing *Ouza v. City of Dearborn Heights*, 969 F.3d 265 (6th Cir. 2020). *Ouza*, however, does not support Kurzawski's *Monell* claim. There, the plaintiff alleged that the defendant city failed to provide any use of force or handcuffing technique training to its police officers, and the city appeared to concede that fact. *Id.* at 287–88. In contrast, the County has presented evidence that its deputies are trained in the use of force annually. (ECF No. 67-3 at PageID.307; ECF No. 67-4 at PageID.320; ECF No. 67-17.) In addition, at the time of the incident, the County had in place use of force and inmate injury policies. (ECF Nos. 67-10 and 67-11.) In short, Kurzawski fails to present evidence establishing a viable *Monell* claim, whether under a failure-to-train or failure-to-supervise theory of liability.

### IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants County, Waterbury, and Turmell's motion for summary judgment (ECF No. 67), and dismiss them from this action.

Dated: January 23, 2023               /s/ Sally J. Berens
                                       SALLY J. BERENS
                                       U.S. Magistrate Judge

### NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).